## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID SMELSER, individually and on behalf of all similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> MARTIN'S FAMOUS PASTRY SHOPPE, INC., <br><br> Defendant. | CIVIL CASE NO: <br><br><br> (EQUITABLE RELIEF SOUGHT) <br><br> OCTOBER 30, 2017 |

### CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff, on behalf of himself and all similarly situated individuals, by and through his undersigned counsel, files this Class and Collective Action Complaint and avers as follows:

### NATURE OF ACTION

1.　　This is a Class and Collective Action Complaint brought to obtain declaratory, injunctive, and monetary relief on behalf of a class of individuals who operate(d) as fresh bakery product distributors for Defendant, Martin's Famous Pastry Shoppe, Inc. ("Martin's" or "Defendant") and who Defendant classifies or classified as independent contractors. Plaintiff alleges violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Connecticut Minimum Act, Conn. Gen. Stat. § 31-58, *et seq.*; and the Connecticut common law of unjust enrichment.

2.　　Defendant employs "distributors" to deliver fresh baked goods to its customers (primarily grocery stores, mass retailers, and fast food chains). In addition to delivering Martin's products to customers, distributors stock the products on store shelves and assemble promotional displays designed and provided by Martin's.

3.     The FLSA collective group consists of all individuals who operate(d) as distributors for Martin's, and are or were classified as independent contractors, anywhere in the United States, at any time during the applicable limitations period ("Class" or "Distributors"). Plaintiff brings the remaining counts on behalf of a Connecticut class consisting of Distributors who operate(d) out of Defendant's Connecticut distribution centers and are or were classified as independent contractors, at any time during the applicable limitations period.

4.     This action challenges both the classification of distributors as independent contractors and Defendant's denial to Plaintiff and the Class of the rights, obligations, privileges, and benefits owed to them as employees. Plaintiff also seeks remedies for unjust enrichment.

## PARTIES

5.     Plaintiff David Smelser ("Plaintiff") is an adult resident and citizen of the Town of Waterford, County of New London, State of Connecticut. Since January 2005, Plaintiff has worked as a Distributor for Martin's, delivering baked goods on behalf of Martin's throughout Connecticut. He performs delivery and merchandising services to local retailers of bakery and snack food products manufactured or sold by Martin's. Plaintiff works out of a distribution center run by Martin's. Plaintiff regularly worked 50–55 hours per week and did not receive overtime premium pay at any time during the class period. During the relevant time, Plaintiff was Martin's employee as that term is defined in Conn. Gen. Stat. § 31-71a.

6.     Martin's Famous Pastry Shoppe, Inc. is a Pennsylvania corporation with its principal place of business located at 1000 Potato Roll Lane, Chambersburg, Pennsylvania 17201. Martin's hires individuals, whom it classifies as independent contractors, to distribute, deliver, and sell bakery and snack food products throughout Connecticut and the United States.

2

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the claims asserted in this action pursuant to, pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005.

8.      The aggregate amount in controversy exceeds $5,000,000, inclusive of damages, statutory penalty damages, and attorneys' fees, pursuant to the Connecticut Minimum Wage Act.

9.      At least one member of the proposed class is a citizen of a state different from that of at least one defendant.

10.      Venue is proper in this Court under 28 U.S.C §§ 1391(b)(2) and 1391(c) because a substantial part of the events giving rise to the claim occurred in this District.

11.      Plaintiff brings this action on behalf of himself, a Federal Collective Group, and a Connecticut Class of similarly situated individuals.

## FACTUAL BASIS

12.      Defendant is a corporation whose business consists of distributing bakery and snack food products to retail customers, using a centralized network of communication, distribution, and warehousing facilities integrating putative class members into that existing network of operations.

13.      Defendant has entered into a relationship with Plaintiff and each of the putative class members to sell, merchandise, distribute, and deliver bakery and snack food products to retailers throughout the eastern United States. The relationship between each member of the Class and Defendant is essentially the same in material respects.

14.      In order to receive such work, Defendant required Plaintiff and all members of the putative class to purchase a route from Defendant or a third party who had previously purchased the route from Defendant. The down payment is non-refundable and is a condition of Defendant

3

providing distributors the opportunity to service Defendant's customers. Defendant required all members of the Class to purchase a route before working for Defendant. Plaintiffs and some putative class members paid a down payment at the time of entering the contract and paid the remaining balance of said down payment in the form of monthly deductions from the compensation paid to them by Defendant. Other putative class members submitted their down payment in a lump sum at the time of entering into the contract.

15.     On or around September 2005, Plaintiff entered an agreement to purchase a route from Debra and Vincent Longo, which required the payment of $70,000 as a condition of working for Defendant. Upon reasonable investigation of counsel, Defendant sold all of its Connecticut routes to a third party who has maintained agreements with Distributors until Defendant re-purchased all routes thereby eliminating the intermediary. The agreement provided that Defendant would make monthly deductions from the compensation paid to Plaintiff for the purchase of Plaintiff's route.

16.     Defendant ships bakery and snack products to warehouses where Distributors, such as Plaintiff and members of the proposed Class, arrive early in the morning and load their vehicles with Defendant's products.

17.     The Distributors then deliver the product to Defendant's retailer-customers at the time and place specified by Defendant.

18.     Distributors use Defendant's hand-held computer to log their deliveries and Defendant bills its customers using the data entered into the computer by the Distributor. The terms of the sale are negotiated between Defendant and its retailer-customer. In rare cases, the Distributor may collect payment from the retailer.

4

19.     Distributors place Defendant's products on the retailer-customer's shelves, remove stale or rejected product, and organize the retailer-customer's display shelf. If Defendant is running a sale or promotion, the Distributor also constructs and stocks the promotional display. Defendant reimburses Distributors for stale or rejected product.

20.     Generally, Defendant guarantees Distributors a minimum wage that is the greater of $800 per week or 24% of the sale price for each product sold by a retailer-customer.

21.     Defendant represented to Plaintiff and other Distributors that they would run their businesses independently, have the discretion to use their business judgment, and have the ability to manage their businesses to increase profitability.

22.     Contrary to its representations, Defendant denied Plaintiff and other Distributors any benefits of ownership and entrepreneurial skill by retaining and exercising the following rights:

    a.   the right to negotiate the wholesale price for the purchase and sale of products;

    b.   the right to negotiate shelf space in the stores in the Distributor's territory;

    c.   the right to establish all sales and promotions and to require Distributors to follow them;

    d.   the right to change orders placed by Distributors, to require Distributors to pay for product they did not order, load the product on their trucks, deliver the product to stores, maintain the product in the store, remove the product from the store, and return the product to the warehouse for credit (Distributors who did not attempt to distribute the extra product were billed for the full wholesale price of that product);

    e.  the right to discipline Distributors for refusing a specific order to deliver a product to a particular store at a particular time;

    f.  the right to handle customer complaints against the Distributor and to take disciplinary action;

    g.  the right to withhold pay for certain specified expenses;

    h.  the right to unilaterally vary the standards, guidelines, and operating procedures; and

    i.  various other rights reserved by Defendant.

23.    Due to Defendant's retention and execution of the above rights, Plaintiff and the putative class members are not free from Defendant's direction and control as required by Prong A of Connecticut's ABC test for determining employee status. Defendant's methods, procedures, and policies with which it required Plaintiff and the putative class members to comply are numerous and detailed and control the manner in which they must perform their tasks. Plaintiff and putative class members were, or are, required to accept Defendant's conditions of employment or face termination.

24.    Defendant not only retained the rights listed above, but it also exercised them. For example, Defendant routinely modifies a Distributor's product order to increase the amount of the order. If a Distributor refuses the additional product, Defendant bills the Distributor for the product and deducts the cost from the Distributor's wages.

25.    Defendant requires the Distributors to process all transactions through a hand-held computer it provides to them. The hand-held computer controls the product prices, maintains customer information, and monitors business performance.

26.     When there are errors in the prices entered in the hand-held computer, the Distributors are required to sell the products at an erroneous price even if it results in them losing money on the sale.

27.     Defendant controls the compensation Plaintiff and members of the putative class can earn by controlling profit margins. Specifically, Defendant negotiates the sale of its products with major retailers. Plaintiff and members of the putative class then deliver the products to store locations per the agreement between Defendant and the retailer.

28.     Defendant deducts various sums of money each month from the wages that it pays Plaintiff and the putative class members. Included among such deductions are the following:

   a.   Storage fees;

   b.   Service fees;

   c.   Technology fees;

   d.   Scan based training fees;

   e.   Supply fees;

   f.   Complaint fees;

   g.   Administrative fees;

   h.   Military base pass fees;

   i.   Cell phone usage fees;

   j.   Special miscellaneous fees; and

   k.   Monthly deductions for remaining portions of the route purchase from Defendant.

29.     For example, for the week ending in September 2, 2017, Defendant deducted a total of $21.00 from Plaintiff's compensation. $20.00 for cell phone usage and $1.00 for a scan based

training fee. On or about August 25, 2017, Defendant deducted a supply fee of $19.59 for labels distributors are required to use at a specific store. Defendant also deducted $50.00 in the form a complaint fee from Plaintiff's compensation on February 18, 2017 and a yearly $179.00 rapid gate pass fee on October 29, 2016 for access to a military base. Other fees, including those listed above have been deducted from Plaintiff's compensation and the compensation of putative class members.

30.     Defendant has taken said deductions from Plaintiff's wages without obtaining a knowing and intelligent written authorization for those deductions on a form approved by the Commissioner of the Department of Labor, as required by Section 31-71e of the Connecticut General Statutes.

31.     Defendant's independent contractor agreement does not constitute written authorization as required by C.G.S. section 31-71e because at the time of the transaction, Defendant represented to Plaintiff and the putative class members that they were not Defendant's employees within the meaning of the CMWA and that Defendant was not their employer. Further, Defendant's deductions were for their sole benefit and did not confer a benefit on Plaintiff and the putative class. Rather, by taking deductions from Plaintiff and putative class members' wages, Defendant illegally shifted its business costs to Plaintiff and the putative class.

32.     Defendant maintains compensation and benefit plans, agreements, and programs that are available to persons who are classified by Defendant as employees. Upon information and belief, the benefit plans include: health benefits, life insurance, short-term and long-term disability, retirement, 401(k) savings, and other benefits. In addition, persons whom Defendant classifies as employees receive other compensation programs, plans, rights, and benefits, including, but not limited to, vacation, holidays, sick leave, and other types of paid leave.

8

33.     Because they were misclassified as non-employees, Plaintiff and members of the Class were denied the rights and benefits of employment, including, but not limited to, wages, holiday pay, and vacation, as well as the other benefits identified above.

34.     Plaintiff and members of the Class have incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendant has required them to take on, or that are necessary for their work.

35.     Plaintiff and members of the Class were, or are, required to pay Defendant's operating expenses, all of which should have been paid by Defendant, including, but not limited to, the following:

   a)   delivery vehicle purchase or lease and registration;

   b)   various insurance policies, including vehicle insurance and work accident insurance;

   c)   delivery vehicle maintenance and repairs;

   d)   maintenance of uniforms;

   e)   fuel; and

   f)   service fees for using the hand-held equipment necessary to transact business.

Items a-e above can be mechanically calculated for each class member using the IRS standard mileage rate for each year within the Class period; items f can be mechanically calculated for each Class member using Defendant's business records that are maintained, in part, using the company-provided hand-held computers.

36.     Upon information and belief, a large number of putative class members earned $1,700 per week, or $92,000 per year.

37.     Upon information and belief, and based upon Plaintiff's audited tax returns, unreimbursed work-related expenses of a Distributor are $20,000 per year, or $385 per week.

9

38.     Accordingly, the average take-home pay for a Distributor is approximately $1,385 per week, or $72,000 per year.

39.     At all relevant times, Plaintiff earned no more than $72,000 per year, or approximately $1,385 per week. His average unreimbursed work-related expenses are approximately $20,000 per year. Accordingly, his weekly take-home pay is approximately $1,385. Specifically, in 2016, Plaintiff's net take-home pay was approximately $72,000.

40.     During the relevant time period, Plaintiff worked in excess of 40 hours every week of the year. Servicing stores can take from 30 minutes to two hours per store. Plaintiff worked 50–55 hours per week on average. For example, during the week of October 1-7, Plaintiff worked approximately 53 hours 50 minutes.  During the week of October 8-14, he worked approximately 54 hours 10 minutes. He never worked less than 45 hours per week and at times had to work up to 60 hours to service all his assigned stores. He is aware of other Distributors who worked 50 hours or more per week on average.

41.     At all relevant times to this complaint, the duties performed by Plaintiff and the putative class members were not performed outside the usual course of Defendant's business or outside of all of the places of business of Defendant as required by prong B of Connecticut's ABC test.

42.     At all relevant times to this complaint, Plaintiff and the putative class members were not customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the services they performed, as is required by prong C of Connecticut's ABC test. Plaintiff and putative class members are entirely dependent upon Defendant for their route assignments and therewith the work they perform. They do not have their own clients or customers. To that end, Plaintiff's contract with Defendant contains a non-compete

clause prohibiting him from marketing, distributing, or selling baked bread or roll products, or snacks Products from any source other than Defendant.

43.     Defendant's mischaracterization of its Distributors as independent contractors, the concealment or non-disclosure of the true nature of the relationship between Defendant and the Distributors, and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful practice by Defendant which this Court should enjoin.

## COLLECTIVE ACTION ALLEGATIONS

44.     Plaintiff brings Count I of this Complaint as a collective action, alleging violations of the FLSA on behalf of himself and all similarly situated individuals. This "Federal Collective Group" is defined as:

> all individuals who, through a contract with Defendant or otherwise, performed or perform as Distributors for Defendant under an agreement with Defendant and who were classified by Defendant as "independent contractors" (collectively "Covered Positions") anywhere in the United States at any time from the date that is three years preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).

The "Federal Collective Group" also includes the named Plaintiff in this action. Plaintiff reserves the right to modify this definition prior to conditional certification of the Federal Collective Group.

45.     Plaintiff and current and former employees of Defendant in Covered Positions are similarly situated in that they have substantially similar job requirements, pay provisions, and are subject to Defendant's common practice, policy, or plan of controlling their daily job functions.

46.     Defendant regularly permitted and required Plaintiff and members of the Federal Collective Group to work more than 40 hours per week without overtime compensation.

47.     Upon information and belief, Defendant knew that Plaintiff and all other similarly situated individuals performed work that required overtime pay.

11

48.    Defendant has therefore operated under a scheme to deprive these employees of overtime compensation by failing to properly compensate them for all time worked.

49.    Defendant's conduct, as set forth in this Complaint, was willful and has caused significant damages to Plaintiff and all other similarly situated individuals.

50.    Count I of this Complaint for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) because Plaintiff's claims are similar to the claims of current and former "independent contractors" who worked for Defendant.

51.    Defendant is liable under the FLSA for failing to properly compensate Plaintiff and all other similarly situated individuals, and notice of this lawsuit should be sent to such individuals. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records.

## CLASS ACTION ALLEGATIONS

52.    Plaintiff brings Counts II and III of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "Connecticut Class" defined as follows:

> All individuals who, through a contract or agreement with Defendant or otherwise, performed or perform in a Covered Position for Defendant within the applicable limitations period.

Plaintiff reserves the right to redefine the Classes prior to class certification.

53.    Plaintiff brings Count IV of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "Connecticut Class" defined as follows:

> All individuals who, through a contract or agreement with Defendant or otherwise, performed or perform in a Covered Position for Defendant within the applicable limitations period.

Plaintiff reserves the right to redefine the Class prior to class certification.

54.     Numerosity: Members of the Class are so numerous that their individual joinder is impracticable. The precise number of putative class members is unknown to Plaintiff. However, upon information and belief, it is approximately 15 individuals. The true number of putative class members is, however, likely to be known by Defendant, and thus, putative class members may be notified of the pendency of this action by first class mail, electronic, and published notice.

55.     Commonality: There are numerous questions of law and fact common to Plaintiff and the Class; those questions predominate over any questions that may affect individual members of the putative class, and include the following:

    a.  whether Plaintiff and members of the Class have been misclassified as independent contractors and actually were or are employees of Defendant;

    b.  whether Defendant has violated the rights of Plaintiff and members of the Class under the Connecticut Wage Act, Conn. Gen. Stat. § 31-58, *et seq*.; Conn. Gen. Stat. § 31-68, 72, *et seq.*; and Connecticut common law by failing to pay them overtime premium wages, making illegal deductions from their wages, depriving them of other benefits of being employees and requiring them to pay Defendant's expenses;

    c.  whether Plaintiff and members of the Class are entitled to injunctive relief prohibiting Defendant from making illegal deductions from the wages of Plaintiff and members of the Class;

    d.  whether Plaintiff and members of the Class are entitled to declaratory relief declaring that they are employees of Defendant;

e.  whether Plaintiff and members of the Class are entitled to injunctive relief requiring Defendant to convey to Plaintiff and the Class the rights, privileges and benefits of employees;

f.  whether the Defendant has been unjustly enriched at the expense of Plaintiff and members of the Class; and

g.  whether Plaintiff and members of the Class are entitled to certain types of pension and other benefits because they are employees of Defendant.

56.     Typicality: Plaintiff's claims are typical of the other members of the Class. Plaintiff is informed and believes that, like other distributors, he was misclassified as an "independent contractor" when he and all other distributors actually were statutory and common-law employees, and were therefore deprived of the protections of employee status under the law. Plaintiff had the same duties and responsibilities as other members of the putative class and was subject to the same policies and practices, and the same or substantially similar conditions of employment.

57.     Adequacy: Plaintiff will adequately represent the interests of the Class. Plaintiff has been treated in the same manner as other putative class members by Defendant and has been damaged by this treatment in the same manner as other putative class members by his loss of overtime premium wages, his exclusion from employee compensation programs, plans and agreements, and his payment of Defendant's expenses. Plaintiff is committed to vigorously prosecuting this action. Plaintiff has retained attorneys who are well qualified to handle lawsuits of this type. Plaintiff has no interests that are averse to those of the Class.

58.     Predominance: This case should be certified as a class action because the common questions of law and fact concerning Defendant's liability predominate over any individual questions, including the amount of damages incurred by each person.

59.     Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the Connecticut Class. The expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

**COUNT I**

**FAILURE TO PAY OVERTIME**
**TO THE FEDERAL COLLECTIVE GROUP**
**FLSA, 29 U.S.C. §§ 201 *et seq.***
(On behalf of the named Plaintiff and the Federal Collective Group)

60.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

61.     Section 207(a)(1) of the FLSA provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

62.     There are no exemptions applicable to Plaintiff or to other members of the Federal Collective Group.

15

63.     For purposes of the FLSA, the employment practices of Defendant were and are uniform in all respects material to the claims asserted in this Complaint throughout the portions of the United States in which Defendant conducts business.

64.     Plaintiff and the other members of the Federal Collective Group, either regularly or from time to time, worked more than 40 hours per week, but did not receive overtime pay.

65.     In committing the wrongful acts alleged to be in violation of the FLSA, Defendant acted willfully in that it knowingly, deliberately, and intentionally failed to pay minimum wages or overtime to Plaintiff and other members of the Federal Collective Group.

66.     As a result of Defendant's failure to pay minimum wages or overtime, Plaintiff and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

67.     Therefore, Plaintiff demands that he and the other members of the Federal Collective Group be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, and attorneys' fees as provided by law.

<u>COUNT II</u>

**FAILURE TO PAY OVERTIME**
**IN VIOLATION OF THE CONNECTICUT WAGE ACT**
**Conn. Gen. Stat. § 31-68**
(On behalf of the named Plaintiff and the Class)

68.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

69.     Defendant has engaged in a widespread pattern, policy, and practice of violating the CWA, as detailed in this Class and Collective Action Complaint.

70.     At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of the CWA.

71.     At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the members of the prospective Connecticut Class, within the meaning of the CWA.

72.     Defendant has failed to pay Plaintiff and the members of the Connecticut Class the overtime wages to which they are entitled under § 31-68 of the CWA.

73.     At all relevant times, Defendant has had a policy and practice of failing and refusing to pay time and a half overtime pay to Plaintiff and the Connecticut Class.

74.     Defendant's failure to pay time and a half overtime wages to Plaintiff and the Connecticut Class is willful.

75.     As a result of Defendant's violations of the CWA, Plaintiff and the members of the Connecticut Class have suffered damages by being denied overtime wages in accordance with the CWA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the CWA.

**COUNT III**

**ILLEGAL DEDUCTIONS & WITHHOLDING OF WAGES**
**Conn. Gen. Stat. § 31-71 e-d *et seq.***
(On behalf of the named Plaintiff and the Class)

76.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

77.     Defendant's practice of making various unlawful and unauthorized deductions from Plaintiff's compensation and the compensation of putative class members violates Conn. Gen. Stat. § 31-71e.

17

78.     This claim is brought pursuant to Conn. Gen. Stat. § 31-72.

## COUNT IV

### UNJUST ENRICHMENT
(On behalf of the named Plaintiff and the Class)

79.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

80.     As set forth above, Plaintiff and members of the Class were employees of Defendant under Connecticut law.

81.     By conditioning their employment on a down payment and on wage deductions for various fees, costs, client sales taxes and charge backs, the agreements Defendant entered with Plaintiffs and the members of the Class violate Conn. Gen. Stat. §31-73 which prohibits employers from requiring the payment of money "to secure employment or continue in employment."

82.     Accordingly, the agreements Defendant entered with Plaintiff and members of the class are unenforceable and in violation of public policy

83.     Defendant has received and retained fees, sum of money and/or contribution from Plaintiff and the putative class members as a condition of work. In this way, Defendant has been unjustly enriched because it benefited at the expense of Plaintiff and members of the class and, to the detriment of Plaintiff and members of the class, failed to pay them for the benefit. It would be unjust to allow Defendant to retain the benefits which they inured at the expense of Plaintiff and members of the class.

84.     Defendant's conduct was wanton and malicious in that Defendant knew that Plaintiff and the putative class members were employees rather than independent contractors and nonetheless, knowingly required them to pay money as a condition of employment. By demanding that Plaintiff and the putative class members pay purchase a distribution agreement before

18

assigning them work, Defendant acted with a reckless indifference to and/or intentional disregard of the rights of Plaintiff and the putative class members.

85.     As a direct and proximate result of Defendant's illegal conduct as set forth above, Plaintiff has suffered and continues to suffer damages, including but not limited to an amount equal to that of the payments made to Defendant under their agreements.

86.     As set forth above, by misclassifying Plaintiff and putative class members as independent contractors when they are considered to be employees under Connecticut law, Defendant was unjustly enriched because it unlawfully shifted its business costs and expenses to Plaintiff and putative class members, to the detriment of Plaintiff and putative class members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests of this Court the following relief on behalf of himself, all other members of the Class, and all other similarly situated individuals:

a. An Order certifying the Federal Collective Group pursuant to Fed. R. Civ. P. 23, certifying the Connecticut Class pursuant to Conn. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing the undersigned counsel of record as Class Counsel;

b. An Order declaring Defendant's conduct as willful, not in good faith, and not based on reasonable grounds;

c. An Order requiring Defendant to compensate Plaintiff and the other members of the Class for the reasonable value of the benefits Plaintiff and the Class provided to Defendant;

d. Reimbursement of unpaid wages at overtime rates for all overtime work as described in this Complaint;

e. Reimbursement at "twice the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court" pursuant to Conn. Gen. Stat. §31-68.

f. Payment of any penalties or other amounts under any applicable laws, statutes or regulations, including, but not limited to, liquidated damages;

g. Judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein, to include pre-judgment interest;

h. Award Plaintiff's reasonable attorneys' fees and costs;

i. Award Plaintiff and the other members of the Class punitive damages in an amount to be determined at trial; and

j.      Grant such other and further legal and equitable relief as this Court deems just and

necessary.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

PLAINTIFF, DAVID SMELSER, individually and on
behalf of all others similarly situated,
By his attorneys,

_____
Richard E. Hayber
Bar. No. ct11629
THE HAYBER LAW FIRM, LLC
221 Main Street, Suite 502
Hartford, CT 06106
(860) 522-8888 (telephone)
(860) 218-9555 (facsimile)
rhayber@hayberlawfirm.com

Shawn J. Wanta, *pro hac vice anticipated*
Dustin W. Massie, *pro hac vice anticipated*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Facsimile: (612) 252-3571
sjwanta@baillonthome.com
dmassie@baillonthome.com