UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID SMELSER, individually and on behalf of all similarly situated individuals<br>　　Plaintiff,<br><br>v.<br><br>MARTIN'S FAMOUS PASTRY SHOPPE, INC.<br>　　Defendant. | No. 3:17-cv-01813 (MPS) |

**RULING ON MOTION FOR SETTLEMENT APPROVAL**

Plaintiff David Smelser brought this action against Martin's Famous Pastry Shoppe, Inc. ("Martin's") on behalf of himself and "all similarly situated individuals." (ECF No. 1.) He alleged that Martin's (1) failed to pay its distributors overtime wages as required under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Connecticut's wage laws, Conn. Gen. Stat. § 31-68; (2) made unauthorized deductions from its distributors' wages in violation of Conn. Gen. Stat. § 31-71 *et seq.*; and (3) misclassified distributors as independent contractors under Connecticut law, thereby shifting its business costs onto its distributors and unjustly enriching itself. The Plaintiff brought his state claims as a putative class action under Fed. R. Civ. P. 23 and his federal claim as a putative collective action under FLSA. *See* 29 U.S.C. § 216(b). On August 24, 2018, the parties reported that the case had settled. They filed a motion for approval of their settlement agreement and supporting materials. (*See* ECF No. 47.) I held a telephonic status conference on October 31, 2018, during which I identified several potential problems that might prevent me from approving the proposed settlement. The parties requested leave to file an amended settlement agreement and motion for approval. On November 26, 2018, the parties filed their amended motion for approval and motion for the Court to retain jurisdiction to enforce the

1

settlement. (ECF Nos. 54, 56.) For the reasons explained below, the amended motions are DENIED without prejudice.

## I. LEGAL STANDARD

The Fair Labor Standards act is "a uniquely protective statute." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015). The Second Circuit has therefore required that district courts review and approve settlements in FLSA actions before they may take effect. *See id.* at 206 ("Thus, Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."). Applying the principles in *Cheeks*, district courts in the Second Circuit consider a non-exclusive set of five factors in evaluating whether a FLSA settlement is fair and reasonable:

> In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Russell v. Broder & Orland*, LLC, No. 3:17-CV-1237 (VAB), 2018 WL 3104101, at *4 (D. Conn. June 22, 2018) (quotation marks omitted)).

## II. DISCUSSION[1]

The proposed settlement agreement and supporting documents do not provide enough information to determine whether the settlement is fair and reasonable. First, the agreement and proposed notice to collective group members are unclear as to how much money each collective group member would receive and how that amount would be calculated. Second, the release-of-

---

[1] I assume familiarity with the claims in the complaint and the procedural history of the case. The discussion below describes those portions of the settlement agreement and supporting documents that are relevant to my decision.

2

claims provision in the settlement agreement is contradicts the release that the parties propose to obtain from collective group members. Third, the procedures the parties propose to effectuate the settlement appear to be incompatible with the FLSA and the Court's obligation under *Cheeks*.

### A. Payments to Collective Group Members

I cannot approve the Settlement Agreement (the "Agreement") in its current form because the parties have not provided enough information to evaluate "the plaintiff's range of possible recovery" or how the proposed payments to collective group members relate to that range. *See Russel*, 2018 WL 3104101, at *4. Under the Agreement, Martin's would pay $155,000.00 into a settlement fund to be disbursed to collective group members who complete a release form to join the lawsuit. (Settlement Agreement, ECF No. 54-3 ¶ 3.24.) The Agreement specifies that the fund would be allocated as follows: First, named-plaintiff David Smelser would receive a $2,500 service award. (*Id.* ¶¶ 13.2.1, 13.5.) Second, collective group members who opt in would receive "straight damages." (*Id*. ¶ 13.2.2.) The amount that each collective group member would receive in the first disbursement is "listed on Confidential Exhibit 7," which the parties sought leave to file under seal. (*Id.*) If fewer than all eligible collective group members opted in, any money remaining in the settlement fund would be reallocated to those individuals who did opt in, increasing their payments up to 20% beyond the initial disbursement. (*Id.* ¶ 13.2.3.)[2]

Confidential Exhibit 7 is a fourteen-page PDF spreadsheet. (*See* ECF No. 55-1.) The parties offer no explanation for the information it contains. The document includes 248 columns, and each page includes at least 48 rows. (*Id.*) Some of the column headings are cut off. (*E.g.*, *id.* at 2 (first column label reading "OH_DELIVERY_" before the text is cut off).) It is not clear whether each

---

[2] The Agreement also provides that distributors who consent to binding arbitration for future claims against Martin's would receive an additional $1,000. (*See id.* ¶ 7.3.)

3

row represents a single distributor, a single distribution territory, or something else.[3] Thus, I cannot determine the total number of hours that the collective group members worked. While the document includes a column for "Average Hourly Rate," the parties do not explain how that rate was calculated and, in particular, whether it is a weighted average or simply the mean of what appear to be weekly hourly rates. (*See* ECF No. 55-1 at 15.) The document includes three sets of "Routes" without any information about hourly rates or other indication about how the dollar amounts associated with those routes were calculated. (*See id.* (listing "Routes 76401/76402/76404," "Routes 4201/4202," and "Routes 23801/23803" without columns for "Average Hourly Rate" or "Total Discounts").) There is also no explanation of the "settlement factor" used in the spreadsheet—shown as .85549301. I assume that this figure reflects the parties' assessment of the litigation risk involved in the case, but they do not say that and do not indicate, for example, whether this "factor" was proposed by or approved by the mediator they hired.

Courts have refused to approve FLSA settlements where the parties failed to provide information about the plaintiffs' wages and hours that would permit an assessment of whether settlement payments represented a fair and reasonable compromise of the plaintiffs' claims. *See, e.g.*, *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177 (S.D.N.Y. 2015) ("Nowhere in the parties' submission is there an actual, bottom-line statement of the dollar amount that each of the named plaintiffs would receive from the proposed settlement. This omission, coupled with the

---

[3] For example, the first column of Exhibit 7 includes the same designation for multiple rows. (*E.g.*, ECF No. 55-1 at 2 (listing "72" for rows two through four.) Thus, each row might represent a single distributor, or it might represent a single territory, with some distributors servicing multiple territories. And if each row represents a territory, it is unclear whether any distributor would receive a payment for a given territory under the Agreement. (*See* ECF No. 54-3 ¶ 13.3 ("Settlement Collective Members who own multiple territories at the same time during the Covered Period may only collect distributions from the Settlement Fund for the territory or territories they personally service.").)

parties' failure to specify on a plaintiff-by-plaintiff basis the alleged numbers of hours worked and applicable wages, leaves the Court in a position in which it cannot discharge its duty to determine whether the settlement amount is fair and reasonable as to each of the named plaintiffs."); *see also Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 84 (E.D.N.Y. 2019), *reconsideration denied*, No. 17-CV-6093-SJB, 2019 WL 2296047 (E.D.N.Y. May 30, 2019). Here, the information the parties provided would, at best, allow me to make an educated guess as to the meaning of Exhibit 7. Doing so would not comport with my obligation under *Cheeks*. I cannot determine with any certainty how much money the collective group members would receive as initial allocations under the settlement or how the parties calculated those amounts. More fundamentally, I cannot determine how the parties calculated the collective group members' hourly wages, how many overtime hours the collective group members worked during the relevant period, or even how many collective group members there are. Thus, I cannot evaluate whether Martin's proposed payments to the collective group are "fair and reasonable."

The parties also request that I approve the form notice attached to the Agreement. The notice states:

> [T]he allocation of settlement funds will be determined using Defendant's records indicating the total hours worked and compensation earned by each Collective Member[] from May 22, 2016 through May 19, 2018. This information will be used to calculate each Collective Members' average hourly rate and thus the compensation they are owed for unpaid overtime hours.

(ECF No. 54-4 at 4–5.) The notice thus implies that collective group members who opt in would receive full payment for any overtime hours they worked. But as noted, Exhibit 7 appears to discount collective group members' payments by a "settlement factor." (ECF No. 55-1 at 15.) This discount is not disclosed in any document other than the sealed Exhibit 7, which the parties apparently do not intend to provide to the recipients of the notice. As a result, the proposed notice

is potentially misleading and does not provide collective group members with enough information to make an informed decision about whether to opt in to the settlement. The notice also fails to explain whether or how residual funding would be re-allocated to the group if fewer than all collective group members opt in, and it makes no mention of the non-monetary relief described in the Agreement. Finally, the notice fails to mention that the proposed "service payment" to the named Plaintiff will come from, and thus reduce, the settlement fund of $155,000.

### B. Release of Claims

I also decline to approve the settlement because the release provision in the Agreement contradicts the release form to be sent to collective group members. The Agreement provides that collective group members who opt in "shall covenant not to sue [Martin's] with respect to any Released Claims, and will be permanently and forever barred from suing or otherwise asserting any Released Claim against any of the Releasees." (Settlement Agreement, ECF No. 54-3 ¶ 8.2.) The Agreement defines "Released Claims" to include "any and all wage and hour claims under federal, state, or local laws" including FLSA claims and claims for improper deductions, as well as "any other claim allegedly arising from the Settlement Collective Members' alleged misclassification as independent contractor[s] . . . ." (*Id.* ¶ 3.20.) The parties' proposed release form, however, suggests that collective group members who opt in would waive only FLSA claims related to unpaid overtime. (*See* ECF No. 54-6 at 2 ("If you sign the line below, you will receive a payment of at least $[pre-printed] but you will lose your right to sue Martin's Famous Pastry Shoppe, Inc. for unpaid overtime under the FLSA for the time from May 22, 2016, through May 19, 2018.").) The proposed form also suggests the release is limited to claims arising between May 2016 and May 2018, while the Agreement contains no such time limitation.

### C. Procedures for Effectuating the Settlement

Finally, I cannot approve the settlement because the parties have not clearly explained the procedures they propose to use to effectuate the settlement, and the procedures they have outlined appear to be incompatible with my obligation under *Cheeks*. FLSA provides that plaintiffs may join a collective action only by filing their written consent with the Court. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.") Here, the parties have not indicated whether they anticipate having collective group members file consent documents on the docket. (*See* ECF No. 54-3 ¶ 10.5.2 (noting that Plaintiff's counsel must provide a list of collective group members who have completed opt-in forms without indicating whether the forms or list would be filed on the docket)). Further, the Agreement suggests that the parties would not send notice of the lawsuit to collective group members until *after* the Court approves the settlement. (*See id.* ¶ 11.1 ("Within two weeks of the date the Court grants Approval of the Settlement . . . the Parties shall cause the Settlement notice . . . to be disseminated to Collective Members as provided herein.").)[4] The parties thus ask the Court to find that the proposed settlement is "fair and reasonable" for collective members who are not before the Court and who have not yet received notice that this lawsuit was filed. It is unlikely such a procedure would be consistent with *Cheeks*. As the court in *Douglas* explained,

> The structure of the collective action provision of FLSA—including the requirement that the opt-ins be filed—is to ensure the presence of plaintiffs before the court. Unlike in a class action, where the rights of unnamed parties are adjudicated in their absence (or via representative), the opposite is true in a collective action. Their presence takes on particular importance in light of *Cheeks* which requires the court to evaluate the fairness

---

[4] Confusingly, the proposed notice to collective group members suggests that the Court has not yet approved the settlement. (*See* Notice to Collective Group, ECF No. 54-4 at 5 ("The exact amount each Collective Member will receive cannot be calculated until the Court approves the settlement . . . .").)

7

of the settlement, as this occasionally requires direct questioning of the party or submission of evidence via affidavit or declaration.

*Douglas*, 371 F. Supp. 3d at 86. It is also unlikely that the proposed releases would be enforceable if the collective group members who opt in are not made parties to the suit by filing written consent on the docket as required by the statute; court approval of private FLSA settlements is required, but the parties cite no authority suggesting that a court may approve a settlement between persons some of whom are not before it. As a result, any amended motion for settlement approval must clearly delineate the procedures the parties propose to use and explain how those procedures are consistent with the requirements for collective actions and private settlements under FLSA.

### D. Additional Barriers to Settlement Approval

For the foregoing reasons, I cannot approve the proposed settlement. I note two additional concerns to provide the parties with guidance should they choose to amend their proposal.

First, the parties request that the Court retain jurisdiction to enforce the settlement agreement. (Motion to Enforce Judgment and Retain Jurisdiction, ECF No. 56.) As I have noted, "[i]f the parties wish that the Court retain jurisdiction to enforce the agreement, the parties must place the terms of their settlement agreement on the public record and must provide the reasons for the Court's retention of jurisdiction." (ECF No. 49.) While the requirement of public disclosure is my general practice in all civil settlements over which I retain jurisdiction, it is particularly important in the context of FLSA. *See Bouzzi v. F & J Pine Rest., LLC*, 841 F. Supp. 2d 635, 639 (E.D.N.Y. 2012) ("Where, as here, the FLSA settlement is submitted to the court for approval, the approval process is a judicial act. Consequently, the settlement agreement is a judicial document to which the presumption of public access attaches.") Here, the Settlement Agreement notes that collective group members will receive "straight damages," but does not describe how damages will be calculated. (ECF No. 54-3 ¶ 13.2.2.) It explains that "Individual FLSA Damages for each

Settlement Collective Member are listed on Confidential Exhibit 7," but the parties sought leave to file that document under seal. (*Id.*) As a result, the parties have not publicly disclosed the basis for, or the result of, their damages calculations, except, as noted, in the general and potentially misleading terms set forth in the proposed notice. It is unlikely that the Court would retain jurisdiction to enforce a settlement agreement that kept material information confidential in this manner. Further, although the Court previously granted a motion to seal "Confidential Exhibit 7," it is reconsidering that order. First, the exhibit appears to be a critical, albeit not fully explained, part of the settlement being submitted for Court approval. That makes it a judicial document. *See Bouzzi*, 841 F. Supp. 2d at 639. A presumption of public access therefore attaches, and "continued sealing . . . may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Bernstein v. Bernstein Lituoqitz Berger & Grossman LLP*, 814 F.3d 132, 139 (2d Cir. 2016). As noted above, the document is difficult to decipher, and it is not at all clear why either party would suffer any commercial or other harm if it were disclosed. The accompanying motion to seal asserts that the document "includes internal financial information relating to Defendant's profit margins" (ECF No. 55), but I fail to see how anyone viewing the above-described spreadsheet could piece together the Defendant's profit margins. If the parties wish to keep this document under seal, they will need to provide a clearer and more compelling rationale.

Second, the parties ask the Court to approve attorneys' fees for Plaintiff's counsel totaling $175,000. Under FLSA, "a court can award attorney's fees based on either the lodestar calculation—the hourly rate times the number of hours worked—or a percentage of the settlement award . . . ." *Douglas*, 371 F. Supp. 3d at 84–85. Counsel seeking fees using the lodestar method "must provide a factual basis for a fee award, typically with contemporaneous time records." *Id.*

9

(quotation marks omitted). Plaintiff's counsel has filed a declaration in support of the request for attorneys' fees listing the hours each attorney worked and that attorney's base hourly rate. The number of hours the declaration lists is substantially different—and irreconcilable—with the version of the declaration filed in support of the parties' original motion for settlement approval. (*Compare* Wanta Decl. in Support of Motion for Settlement Approval, ECF No. 47-2 ¶ 24 (dated 8/24/2018 and listing 108 hours for Attorney Wanta and 28.3 hours for Attorney Massie); *with* Wanta Decl. in Support of Amended Motion, ECF No. 54-2 (dated 11/26/2018 and listing 42.4 hours for Attorney Wanta and 193.1 hours for Attorney Massie).) In light of this discrepancy, and the requirements for attorneys' fees in the Second Circuit, any amended application for attorneys' fees will be denied unless it includes contemporaneous billing records.

## III. Conclusion

For the reasons stated above, the motion for settlement approval (ECF No. 54) and motion to enforce judgment (ECF No. 56) are DENIED without prejudice. The parties may file amended motions that address the foregoing defects, including any further rationale for sealing "Confidential Exhibit 7" (ECF No. 55-1), within **21 days**.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
July 10, 2019