UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID SMELSER, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>-v-<br><br>MARTIN'S FAMOUS PASTRY SHOPPE, INC.,<br><br>Defendant. | Civil Case No. 3:17-cv-01813-MPS<br><br>January 6, 2020 |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF COLLETIVE ACTION SETTLEMENT**

Plaintiff David Smelser, individually and on behalf of each of the Settlement Group Members[1] by and through his attorneys, respectfully submits this memorandum in support of his unopposed motion for Final Approval of the collective action Settlement in this Litigation.

## I. INTRODUCTION.

Pursuant to Fair Labor Standards Act, 29 U.S.C. § 216(b), Plaintiff seeks Final Approval of the collective action Settlement reached in this Litigation. In its November 6, 2019 Order Preliminarily Approving Collective Action Settlement, this Court found that

[1] All capitalized terms used herein have the same meaning as in the Settlement Agreement ("Agreement") submitted to this Court on September 9, 2019 (Dkt. No. 61-3). All "§" or "§§" references herein are to the Agreement, unless otherwise noted.

the proposed Settlement was within the range of reasonableness meriting further proceedings and possible Final Approval. (Dkt. No. 62.)

Class Counsel and Martin's Famous Pastry Shoppe, Inc. ("Martin's" or "Defendant") have since collaborated to send Class Settlement Notice to the Settlement Group, as authorized by the Court's Order. The Settlement Group's response to the proposed Settlement has been overwhelmingly positive. Indeed, twenty-nine percent of the Settlement Group has consented to join the Settlement and no class member has objected or provided negative feedback. The proposed Settlement will fully compensate each of these Settlement Group Members for the acutal amount of overtime premium pay owed (50% of the regular rate of pay) for each overtime hour worked. (*See* Settlement § 13.) Additionally, because fewer than all class members have opted-in to the settlement, another distribution will be made from the settlement in an amount up to 20% above their calculated overtime premium pay. (*Id.*) This is an exceptional result for the Settlement Group considering the risks of continued litigation on the merits. Accordingly, Plaintiff respectfully requests that the Court grant his motion for final approval of the Settlement.

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY.

Named Plaintiff David Smelser worked as a Martin's distributor in Connecticut from approximately January 2005 to the present. Plaintiff filed a complaint in this matter on October 30, 2017 alleging Martin's violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by misclassifying its bakery distributor drivers ("Distributors") as independent contractors, thereby depriving the Distributors of overtime premium pay to

which they are entitled under the FLSA. At all times, Martin's has denied Plaintiff's allegations.

In early January, Plaintiff filed a motion for Conditional Certification of the FLSA Collective Group. Thereafter, Martin's attorneys contacted Plaintiff's counsel to negotiate the Settlement Group definition to determine whether an agreement could be reached with respect to the scope of the collective action, understanding that Defendant would not oppose the Motion for Conditional Certification if the Parties were able to reach an agreement.

During their negotiations regarding the form and content of notice to Settlement Group members, the Parties engaged in informal discovery regarding Settlement Group size and the alleged overtime hours worked by prospective members. During these negotiations and following the review of informal discovery, the Parties discussed the possibility of early resolution and requested an extension from the court to file an agreed upon notice and/or determine whether their efforts were better focused on exploring early resolution of this matter.

From February to April, the Parties exchanged additional information and documents including Plaintiff's calculations of the hours he has worked during the Covered Period, calculations of damages to the Collective Group, the amount of overtime compensation Plaintiff believes he is owed and the deductions to which Plaintiff believed he was entitled during the Covered Period. Defendant produced extensive information regarding the identify of distributors, the territories each distributor served, weeks worked by each distributor during the Covered Period, a list of distributors who have signed

Arbitration agreements with Defendant, a list of distributors that do not fall within the agreed-upon definition, an analysis of the hours worked by each distributor based on Defendant's records, calculations of each distributor's regular rate of pay, and Defendant's calculations of each distributors claimed damages. Following review and analysis of this discovery, the Parties agreed to further settlement discussions with the use of a mediator.

In the following months, the parties, through their lawyers, negotiated to agree upon a mediation range consisting of a maximum and minimum monetary benefit for members of the Settlement Group and possible non-monetary relief. The parties agreed to retain Carole Katz, a mediator with extensive experience in facilitating FLSA settlements and specific experience with distributor lawsuits, to facilitate the mediation. The mediation was held on May 30, 2018. At mediation, the parties were able to reach agreement on major settlement terms. Following the mediation, the parties continued their settlement discussions and ultimately agreed upon all settlement terms. The parties spent approximately two months negotiating the Settlement Agreement and its exhibits. The specific terms of the Settlement are contained in the Settlement Agreement, which was initially submitted to this Court on August 27, 2018 [Dkt. 47-3].

On August 28, 2018, Plaintiff filed an Unopposed Motion to Approve Settlement. [Dkt 47.] On October 31, 2018, a telephonic status conference was held before Judge Michael P. Shea to discuss Plaintiff's Unopposed Motion to Approve Settlement. During that conference, the Court highlighted changes needed to that motion. On November 26, 2018, Plaintiff re-filed its Unopposed Motion to Approve Settlement. On July 10, 2019, the Court issued an order denying Plaintiff's Unopposed Motion to Approve Settlement

without prejudice. [Dkt. 58.] On September 9, 2019 and based on the Court's Order, the Parties filed a joint motion and memorandum in support of Preliminary Approval of this collective action Settlement, which included the Parties' motion for conditional certification of the Settlement Group, appointment of Class Counsel, approval of Notice to Settlement Group Members, and the scheduling of a Final Approval Hearing on the proposed Settlement. [Dkt. 61.] In contrast to Plaintiff's prior motion, the renewed motion sought to proceed with a two-step process whereby Class Counsel would first send notice to Settlement Group members regarding the pendency of this action and the ability to opt-in before seeking final approval.

On November 6, 2019, the Court granted Preliminary Approval. [Dkt. No. 62.] In its Order, the Court conditionally certified the following Settlement Group for settlement purposes only, pursuant to section 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"):

> All individuals who: (i) are a party to a Distributor Agreement with Martin's, either individually or as a majority owner of a business entity that distributes Martin's products, and (ii) primarily service the route(s) owned during a Covered Period (from August 6, 2017 through August 3, 2019), and (iii) have not signed an agreement that provides for mandatory arbitration, and (iv) have worked more than 40 hours in at least one work week during the Covered Period according to the delivery ticket analysis completed by Defendant. Excepted from this definition are all distributors working in the New York City Metro.

The Court also directed notice to all proposed Settlement Group Members, appointed named Plaintiff David Smelser as Settlement Group Representative, and appointed Mr. Wanta, Mr. Massie and Mr. Hayber and their firms as Class Counsel to represent the Settlement Group. [Dkt. No. 62.]

Plaintiff and Martin's have collaborated to administer the Notice Program to 41 proposed Settlement Group Members. Class Counsel disseminated Notice, in accordance with the Settlement Agreement, on Friday, November 22, 2019 (*See* Agreement § 9.) Since that time, no Settlement Group Members have objected to the terms of the Agreement and twenty-nine percent have opted-in to the FLSA collective group. Plaintiff now respectfully submits this Motion and Memorandum in Support of Final Settlement Approval of Collective Action Settlement.

## III. THE SETTLEMENT.

The terms of the settlement between the parties are set forth in the Settlement Agreement. The Settlement Agreement is the product of lengthy and often contentious negotiations over the course of almost a year. (*See* Declaration of Shawn J. Wanta ("Wanta Decl."), ¶ 5.) The terms contained in the Settlement Agreement were agreed-upon only after a day-long mediation facilitated by Carole Katz, a mediator well-versed in class action employment misclassification claims. (*See* Wanta Decl. ¶ 9.) During the mediation, experienced and capable counsel for Plaintiff and Defendant vigorously advocated their respective clients' positions during the mediation and corresponding settlement negotiations.

As part of the settlement process, the parties relied upon the informal discovery produced pre-suit to verify the representations that the parties made during the negotiation process. In the end, the parties' determined and good-faith efforts to resolve the litigation resulted in a fair settlement that provides substantial benefits to all members of the Settlement Group.

The settlement provides for a cash recovery to all members of the Settlement Group and does so through a claims process that is fair and reasonable and does not unduly burden Settlement Group members. Each Settlement Group member who submits a valid Claim Form will receive a cash payment based on an estimate of the amount of hours over 40 worked each week between August 6, 2017, and August 3, 2019 as calculated based on Defendant's business records. In order to be considered a Settlement Group Member, distributors must: (i) be a party to a Distributor Agreement with Martin's, either individually or as a majority owner of a business entity that distributes Martin's products, and (ii) primarily service the route(s) owned during a Covered Period, and (iii) have not signed an agreement that provides for mandatory arbitration, and (iv) have worked more than 40 hours in at least one work week during the Covered Period according to the delivery ticket analysis completed by Defendant. Excepted from this definition are all distributors working in the city and suburbs of New York City Metro.

The settlement, as set forth in the Settlement Agreement, treats all similarly situated Settlement Group members fairly and equally, as the recovery of each Settlement Group member is based on the number of overtime hours each distributor personally worked. The estimated overtime payment for each Settlement Group Member was calculated based upon business records available to Martin's. The parties derived an estimate of the number of overtime hours worked by each Settlement Group member and an estimate of each Settlement Group Member's regular rate of pay during the Covered Period.

The parties estimated hours worked from time stamped delivery tickets submitted by distributors to Martin's each time that a distributor visits a customer location. As a

general rule, a Settlement Group Member's daily hours worked were derived based upon the assumption that the work day started 40 minutes prior to the time at which the distributor completed the first delivery ticket of the day and the work day ended at the time that the distributor completed the last delivery ticket of the day. However, to account for long breaks in work activity during the workday, if there was a gap of more than two hours between completed delivery tickets, the distributor was credited with only two hours of work for the time-period between such deliveries. In addition, although distributors who do not personally service their routes are not eligible to be a Settlement Group Member, some Settlement Group members who own and personally service multiple routes employ helpers to service one or more of the owned routes. In such circumstances, the total hours worked estimate for such Settlement Group members was based upon the sum of the estimated hours worked across all of the routes owned (based upon the delivery ticket analysis explained above) with a reduction of slightly less than one-third of the total combined hours (specifically 32.9%) to account for work activities of helpers.

Each Settlement Group Member's estimated regular rate of pay was derived based upon the net discount payments over the Covered Period (Martin's net sales to the independent distributor × the applicable discount rate on those sales) divided by the total estimated hours worked over the Covered Period. For purposes of calculating the estimated regular rate of pay, no percentage adjustment was made to either the net discount payments or the estimated hours worked for settlement group members who own multiple routes and employ helpers, since any such adjustment applied to both the divisor and the dividend would offset.

The Settlement provides members of the Settlement Group with a significant amount of compensation in exchange for the release of their claims. Specifically, each Settlement Group Member will receive a Share of the Settlement Fund that is equivalent to the one hundred percent of the amount of overtime premium pay owed (50% of the regular rate of pay) for each overtime hour worked. (*See* Agreement § 13.) Additionally, because fewer than all class members have opted-in to the settlement, another distribution will be made from the settlement in an amount up to 20% above their calculated overtime premium pay.[2] (*Id.*) This is an exceptional result for the Settlement Group. The Settlement, as set forth in the agreement, is fair, reasonable, adequate, and in the best interest of the Plaintiffs and the Settlement Group.

In addition to the monetary settlement terms, Defendant has agreed to implement certain changes and modifications to the independent distributor model including establishing the position of Distributor Advocate to oversee the internal dispute resolution process, giving distributors the option to stop servicing unprofitable stops excluding strategic customers, and providing sales management training.

Plaintiff's counsel are all experienced in collective action litigation as well as the settlement and claims process and believe that the proposed settlement, as set forth in the

---

[2] Because the end of the opt-in period coincides with the deadline for the filing of this motion, Class Counsel may continue to receive valid opt-in forms due to the mailbox rule (claim forms that are postmarked by the claims deadline). Although, Class Counsel believes another distribution will made at 20% above each Settlement Group Member's calculated premium overtime pay, this number is subject to change depending on whether valid claims forms are received after the filing of this motion.

Settlement Agreement, is a fair, adequate, uniform, and reasonable settlement to the Settlement Collective. (*See* Wanta Decl., ¶¶ 18-19.)

**A. The Settlement Group.**

Subject to final approval by the Court, the Settlement Agreement covers all individuals who: (i) are a party to a Distributor Agreement with Martin's, either individually or as a majority owner of a business entity that distributes Martin's products, (ii) primarily service the route(s) owned during a Covered Period (from August 6, 2017 through August 3, 2019), (iii) have not signed an agreement that provides for mandatory arbitration, and (iv) have worked more than 40 hours in at least one work week during the Covered Period according to the delivery ticket analysis completed by Defendant. Excepted from this definition are all distributors working in the New York City metropolitan area.

**B. Terms of The Settlement Agreement.**

The Settlement Group consists of 41 distributors throughout the eastern United States.[3] Pursuant to the terms of the Settlement Agreement, Defendant has agreed to pay a total sum of one hundred fifty-two thousand six hundred nine dollars and seventy-eight cents ($152,609.78) (the "Gross Settlement Sum") to settle and pay the timely and valid claims of the members of the Settlement Group. (Ex. A, Agreement, §§ 3, 12, 13.)

---

[3] Although approximately 76 distributors meet the first three criteria for inclusion in the Settlement Group, only 41 of those distributors have worked more than 40 hours in at least one work week during the Covered Period according to the delivery ticket analysis completed by Defendant.

The Settling Named Plaintiff has approved the terms of the Settlement Agreement. In particular, the named plaintiff consulted with his attorneys and considered all of the possible outcomes of the litigation, and independently concluded that the Settlement Agreement is a satisfactory outcome for the Collective Group's claims. The Settling Named Plaintiff, as a typical and adequate Settlement Group representative, has approved the Settlement Agreement as a fair, reasonable, and adequate resolution to the action. The Parties hereby submit the terms of the Settlement as fair, reasonable, and in the best interests of the Settlement Group.

**C. Release Provisions in the Settlement Agreement.**

In exchange for the consideration provided by Martin's, all Settlement Group members who timely complete an Consent to Join Settlement Form shall become members of the Settlement Group and, assuming that the Court approves the Settlement Agreement, shall be subject to the release of claims set forth in the Settlement Agreement. (*See* Agreement, § 8.) The release covers any and all wage and hour claims under federal, state, or local laws arising up to the date on which the Court grants preliminary approval, including, but not limited to, those claims arising under the Fair Labor Standards Act, and any other claim for unpaid benefits or overtime, improper deductions, failure to reimburse expenses, failure to make any payments that are derivative of, or in any way related to, any wage and hour, overtime, benefits or other claims based on the Settlement Group members' alleged misclassification as independent contractors; any other claim allegedly arising from the Settlement Group members' alleged misclassification as independent contractor while performing services under a Distributor Agreement with Martin's or any predecessor

entity; and any penalty, interest, taxes or additional damages or costs which arise from or relate to the claims described above under applicable federal, state or local laws, statutes, or regulations (collectively, the "Released Claims"). (Agreement, § 3.21.)

Any Collective Group member that does not timely submit a Consent to Join Settlement Form will retain the right to seek to bring an action alleging violations of the FLSA.

## IV. NOTICE TO THE SETTLEMENT GROUP SATISFIED DUE PROCESS.

As approved by the Court, the Settlement Notice notified putative Settlement Group Members of the pendency of the Action and described the FLSA claim for overtime; informed putative Settlement Group Members of the Settlement, the Settlement Shares, and how the Settlement Shares will be allocated; and explained that putative Settlement Group Members must submit a claim form to receive a Share of the Settlement, described the procedure for opting in to the collective group and explained the effect of the same. Accordingly, the Class Settlement Notice was "timely, accurate, and informative." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

Following the Court's November 6, 2019 Order, Defendant provided Class Counsel with the most current information from its payroll records for purposes of identifying individual members of the Settlement Group and mailing the Notice. (Wanta Decl. ¶ 20.) On November 22, 2019, Class Counsel mailed the Class Settlement Notices via regular

first-class mail to the Settlement Group, forty-five days before the January 6, 2020 Settlement Notice Deadline. (Wanta Decl. ¶ 21.)

The Settlement Claim Forms were printed on yellow paper that contained bold text in all caps that notified members of the Settlement Group that the Settlement Claim Form must be timely returned to participate in the Settlement. (Wanta Decl. ¶ 22.) The individualized, estimated settlement payment for each member of the Settlement Group was printed in bold at the top of each Settlement Claim Form. (*Id.*) Additionally, the Settlement Claim Form contained instructions for returning the form. These instructions directed the attention of the Settlement Group to the deadline for returning the Settlement Claim Form. (*Id.*) Finally, Class Counsel provided a self-addressed postage-paid envelope to each of the putative Settlement Group Members, so he or she could easily return his or her completed Settlement Claim Form to Class Counsel at no cost to the class member. (*Id.*)

Although the Parties made significant efforts to obtain the most current contact information, one of the 41 Class Settlement Notices mailed was returned as undeliverable. (Wanta Decl. ¶ 23.) Upon receipt of the undeliverable correspondence, Class Counsel engaged in several measures to locate alternative contact information and notify this individual of the Litigation and the Settlement. Specifically, Class Counsel collaborated with Defendant and Defense Counsel to identify other potential mailing addresses. (*Id.*) Through these efforts, Class Counsel obtained a different mailing address and an email

address for this individual and promptly mailed him a duplicate copy of the Class Settlement Notice and Claim Form through US Mail and electronically. (*Id*.)

Class Counsel also conducted its own investigation, which included searching commonly used social media and networking web sites for email addresses and phone numbers. (Wanta Decl. ¶ 24.) Class Counsel found an online profile for this potential Settlement Group member on Facebook and sent him a message notifying him of the Litigation and the Settlement. (*Id*.)

On December 20, 2019. Class Counsel mailed the Reminder Notices via regular first-class mail to 35 Settlement Group members who had not yet returned the Settlement Claim Form to opt-in to the collective action Settlement. (Wanta Decl. ¶ 25.) The correspondence included a reminder of the deadline for joining the Settlement. (*Id*.)

After the original notice was mailed, members of the Settlement Group had forty-five days to opt-in to the collective action. By the Settlement Claims Deadline of January 6, 2020, twenty-nine percent (29%) of the Settlement Group had opted-in to the FLSA collective action by returning the Settlement Claim Form. (Wanta Decl. ¶ 26.) The claim forms received accounted for $108,077.74 of the total Gross Settlement Fund of $152,609.78. Accordingly, the opt-ins have claimed approximately seventy-one percent (71%) of the settlement fund. As previously noted, because the claims deadline coincides with the filing of this motion, Class Counsel may receive valid claim forms (that have been postmarked by January 6, 2020) after the filing of this motion. Should this occur, Class

Counsel will file a Supplement to this Motion that provides the total number of opt-in Plaintiffs and the total dollar value claimed prior to the Final Approval Hearing. (*Id.*)

In granting Preliminary Approval of the Settlement, the Court found that the above-described methods are the best practicable means by which the Settlement Class could receive notice, and therefore, meet the requirements of due process. (Dkt. 62.) The approved Notice Program has been carried out by Class Counsel and Defendant in accordance with the Court's Order. (Dkt. 62.) In fact, as described above, the Parties have gone beyond the measures approved by the Court to provide notice to the Settlement Group. These extensive efforts satisfy the reasonableness standard of due process.

## V. FINAL APPROVAL IS APPROPRIATE BECAUSE THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND NOT THE PRODUCT OF COLLUSION BETWEEN THE PARTIES.

A court may approve a collective action settlement if it determines that the settlement is a fair compromise of a bona fide wage and hour dispute. *Aros v. United Rentals, Inc.*, No. 3:10-CV-73 JCH, 2012 WL 3060470, at *2 ("the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement and is therefore appropriate for approval"). In its November 6, 2019 Order Granting Preliminary Approval, this Court found that the Settlement falls within the range of reasonableness meriting further proceedings and possible final approval. (Dkt. 62.) Indeed, the facts of this matter demonstrate that the Settlement is a fair and a reasonable resolution of a bona fide wage and hour dispute.

The proposed Settlement was the product of arm's length, non-collusive negotiations, overseen by a respected mediator. (Wanta Decl. ¶¶ 4-7.) Plaintiffs are and

have been represented by experienced counsel throughout this Litigation. (Wanta Decl. ¶ 3.) In addition, the Parties have exchanged a significant amount of information, which spanned more than a year, and also, independently reviewed various documents and information. Class Counsel analyzed this data and performed damages calculations for each of the putative Settlement Group Members, which were considered throughout negotiations and mediation to reach the Settlement.

The Settlement provides members of the Settlement Group with a significant amount of compensation in exchange for the release of their claims. Specifically, each Settlement Group Member will receive a Share of the Settlement Fund that is equivalent to the one-hundred percent of the amount of overtime premium pay owed (50% of the regular rate of pay) for each overtime hour worked. Additional, because fewer than all class members have opted-in to the settlement class, another distribution will be made from the Settlement in an amount up to twenty percent (20%) above their calculated overtime premium pay. This is an exceptional result for the Settlement Group. The Settlement, as set forth in the agreement, is fair, reasonable, adequate, and in the best interest of Plaintiff and members of the Settlement Group. (Wanta Decl. ¶ 29.)

Therefore, Plaintiff respectfully requests the Court's Final Approval.

## VI. THE PROPOSED SETTLEMENT GROUP MEETS THE REQUIREMENT FOR FINAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(B).

Section 216(b) of the FLSA sets forth certain criteria that need to be met in order to maintain a collective action under the FLSA. 29 U.S.C. § 216(b). Courts in this Circuit employ a two-step process to decide whether to certify a collective action under Section

216(b). *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir.2010). At the first step, the court makes an initial determination as to whether other potential plaintiffs are situated similarly to the named plaintiff with respect to the alleged FLSA violations. *Id.* at 555. At the second step, following discovery, the court reconsiders its preliminary determination as to whether the opt-ins are "similarly situated." *Id.* Although the FLSA itself does not define the term "similarly situated," courts require that there be a "factual nexus between the claims of the named plaintiff and those who have chosen [or might potentially choose] to opt-in to the action." *Davis v. Lenox Hill Hosp.*, 2004 WL 1926086, at *7 (internal quotation marks omitted). The relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA. *Raniere v. Citigroup, Inc.*, 827 F.Supp.2d 294, 323 (S.D.N.Y.2011). After conditional certification, the second determination of whether the named plaintiffs are similarly situated is typically precipitated by a motion for 'decertification' by the defendant." *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013). Such a motion warrants a "more stringent factual determination" by the court. *Lynch*, 491 F.Supp.2d at 368.

On November 6, 2019, the Court conditionally certified the FLSA Collective Group and directed notice to all Settlement Group Members during the Class Period. (Dkt. 62.) Defendant does not oppose Plaintiff's motion for Final Approval and is not seeking decertification. Nor has any Settlement Group Member challenged the certification of the FLSA collective group. Moreover, those Settlement Group Members

who do not opt-in do not release their claims and retain the right to seek legal remedy. Accordingly, final certification of the collective group for settlement purposes is appropriate based on the facts of the record, the agreement of the Parties and the previous Order of this Court.

**VII. CONCLUSION.**

Plaintiff and Defendant respectfully submit that the Settlement is fair, reasonable, and adequate. For the reasons set forth above, the Parties respectfully request that the Court grant Final Approval of the Settlement and enter the judgment and dismissal with prejudice submitted.

Dated: January 6, 2020

Respectfully submitted,

s/Shawn J. Wanta

Shawn J. Wanta #phv09383
Dustin W. Massie #phv09384
*Attorneys for Plaintiff*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
sjwanta@baillonthome.com
dmassie@baillonthome.com

Richard E. Hayber, #ct11629
Hayber, McKenna & Dinsmore, LLC
750 Main Street, Suite 904
Hartford, CT 06103
Telephone: (860) 920-5361
Fax: (860) 218-9555
rhayber@hayberlawfirm.com

**ATTORNEYS FOR NAMED PLAINTIFF DAVID SMELSER AND OPT-IN PLAINTIFFS**