UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID SMELSER, individually and on behalf of all similarly situated individuals,<br><br>                              Plaintiff,<br><br>-v-<br><br>MARTIN'S FAMOUS PASTRY SHOPPE, INC.,<br><br>                              Defendant. | Civil Case No. 3:17-cv-01813-MPS<br><br><br><br>January 6, 2020 |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF SERVICE AWARD.**

Plaintiff David Smelser, individually and on behalf of each of the Settlement Group Members[1] by and through his attorneys, respectfully submits this memorandum in support of his motion for award of attorneys' fees, reimbursement of expenses, and payment of Service Awards to the Class Representative for his hard work and skill in prosecuting this action and securing a favorable settlement for the Settlement Group Members.

## I.    Introduction

Class Counsel have achieved a comprehensive settlement that resolves this Collective Action against Martin's Famous Pastry Shoppe, Inc. ("Martin's" or "Defendant"). The

---

[1] All capitalized terms used herein have the same meaning as in the Settlement Agreement ("Agreement") submitted to this Court on September 9, 2019 (Dkt. No. 61-3). All "§" or "§§" references herein are to the Agreement, unless otherwise noted.

Settlement, which was achieved after protracted, arm's length negotiations between the Parties, provides valuable economic relief and other benefits to current and former employees who were denied overtime pay. Pursuant to the Settlement, Settlement Group Members who opt-in to the Fair Labor Standards Act ("FLSA") collective group will receive compensation based on the number of Eligible Weeks they worked during the Covered Period. (Agreement § 13.)

For achieving this economic relief on behalf of the Settlement Group, Plaintiff respectfully requests a reasonable award of attorneys' fees and expenses, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). Additionally, Plaintiff respectfully requests the court grant him a Service Award for his time and efforts undertaken on behalf of the Settlement Group.

## II.    III.    Procedural History and Factual Background

Named Plaintiff David Smelser worked as a Martin's distributor in Connecticut from approximately January 2005 to the present. Plaintiff filed a complaint in this matter on October 30, 2017 alleging Martin's violated the FLSA, 29 U.S.C. § 201 et seq., by misclassifying its bakery distributor drivers ("Distributors") as independent contractors, thereby depriving the Distributors of overtime premium pay to which they are entitled under the FLSA. At all times, Martin's has denied Plaintiff's allegations.

In early January, Plaintiff filed a motion for Conditional Certification of the FLSA Collective Group. Thereafter, Martin's attorneys contacted Plaintiff's counsel to negotiate the Settlement Group definition to determine whether an agreement could be reached with respect to the scope of the collective action, understanding that Defendant would not

oppose the Motion for Conditional Certification if the Parties were able to reach an agreement.

During their negotiations regarding the form and content of notice to Settlement Group members, the Parties engaged in informal discovery regarding Settlement Group size and the alleged overtime hours worked by prospective members. During these negotiations and following the review of informal discovery, the Parties discussed the possibility of early resolution and requested an extension from the court to file an agreed-upon notice and/or determine whether their efforts were better focused on exploring early resolution of this matter.

From February to April, the Parties exchanged additional information and documents including Plaintiff's calculations of the hours he has worked during the Covered Period, calculations of damages to the Collective Group, the amount of overtime compensation Plaintiff believes he is owed and the deductions to which Plaintiff believed he was entitled during the Covered Period. Defendant produced extensive information regarding the identify of distributors, the territories each distributor served, weeks worked by each distributor during the Covered Period, a list of distributors who have signed Arbitration agreements with Defendant, a list of distributors that do not fall within the agreed-upon definition, an analysis of the hours worked by each distributor based on Defendant's records, calculations of each distributor's regular rate of pay, and Defendant's calculations of each distributors claimed damages. Following review and analysis of this discovery, the Parties agreed to further settlement discussions with the use of a mediator.

In the following months, the parties, through their lawyers, negotiated to agree upon a mediation range consisting of a maximum and minimum monetary benefit for members of the Settlement Group and possible non-monetary relief. The parties agreed to retain Carole Katz, a mediator with extensive experience in facilitating FLSA settlements and specific experience with distributor lawsuits, to facilitate the mediation. The mediation was held on May 30, 2018. At mediation the parties were able to reach agreement on major settlement terms. Following the mediation, the parties continued their settlement discussions and ultimately agreed upon all settlement terms. The parties spent approximately two months negotiating the Settlement Agreement and its exhibits. The specific terms of the Settlement are contained in the Settlement Agreement, which was initially submitted to this Court on August 27, 2018 [Dkt. 47-3].

On August 28, 2018, Plaintiff filed an Unopposed Motion to Approve Settlement. [Dkt 47.] On October 31, 2018, a telephonic status conference was held before Judge Michael P. Shea to discuss Plaintiff's Unopposed Motion to Approve Settlement. During that conference, the Court highlighted changes needed to that motion. On November 26, 2018, Plaintiff re-filed its Unopposed Motion to Approve Settlement. On July 10, 2019, the Court issued an order denying Plaintiff's Unopposed Motion to Approve Settlement without prejudice. [Dkt. 58.] On September 9, 2019 and based on the Court's Order, the Parties filed a joint motion and memorandum in support of Preliminary Approval of this collective action settlement, which included the Parties' motion for conditional certification of the Settlement Group, appointment of Class Counsel, approval of Notice to Settlement Group Members, and the scheduling of a Final Approval Hearing on the

proposed Settlement. [Dkt. 61.] In contrast to Plaintiff's prior motion, the renewed motion

sought to proceed with a two-step process whereby Class Counsel would first send notice

to Settlement Group members regarding the pendency of this action and the ability to opt-

in before seeking final approval.

On November 6, 2019, the Court granted Preliminary Approval. [Dkt. No. 62.] In

its Order, the Court conditionally certified the following Settlement Group for settlement

purposes only, pursuant to section 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201,

et seq. ("FLSA"):

> All individuals who: (i) are a party to a Distributor Agreement with Martin's, either
> individually or as a majority owner of a business entity that distributes Martin's
> products, and (ii) primarily service the route(s) owned during a Covered Period
> (from August 6, 2017 through August 3, 2019), and (iii) have not signed an
> agreement that provides for mandatory arbitration, and (iv) have worked more than
> 40 hours in at least one work week during the Covered Period according to the
> delivery ticket analysis completed by Defendant. Excepted from this definition are
> all distributors working in the New York City Metro.

The Court also directed notice to all proposed Settlement Group Members, appointed

named Plaintiff David Smelser as Settlement Group Representative, and appointed Mr.

Wanta, Mr. Massie and Mr. Hayber and their firms as Class Counsel to represent the

Settlement Group. [Dkt. No. 62.]

Plaintiff and Martin's have collaborated to administer the Notice Program to 41

proposed Settlement Group Members. Class Counsel disseminated Notice, in accordance

with the Settlement Agreement, on Friday, November 22, 2019 (*See* Agreement § 9.) Since

that time, no Settlement Group Members have objected to the terms of the Agreement and

29 percent have opted-in to the FLSA collective group. On January 6, 2020, Plaintiff filed

his Motion and Memorandum in Support of Final Settlement Approval and Class Certification with this Court. [Dkt. 17.] Plaintiff now respectfully requests the Court grant an award of reasonable attorneys' fees, reimbursement for expenses, and payment of the Service Award to the Class Representative.

## III. IV.   The Award of Attorneys' Fees Is Reasonable Under Federal Standards

It is well established that "attorney fees are an integral part of the merits of FLSA cases." *Shelton v. M.P. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987). The applicable statute in this litigation mandates an award of attorneys' fees and costs. The FLSA provides that "[t]he court in such action <u>shall</u>, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. §216(b) (emphasis added); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 415 n. 5 (1978) (referring to § 216 of the FLSA as one of the "statutes [that] make fee awards mandatory for prevailing plaintiffs").

A reasonable fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil case. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007). A court adjudicating a claim for an award of attorneys' fees will consider the prevailing rate in the district in which the court sits (the "forum rule"). *Polk v. New York State Department of Correction*, 722 F.2d 23, 35 (2d Cir.1983). Courts evaluate the reasonableness of the rate using a range of case-specific variables known as

the "Johnson factors", and by relying on their own "experience as lawyers within their districts." *See id.* at 25 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Although Class Counsel is not seeking payment of its lodestar, these considerations show Class Counsel's rates are reasonable, and all weigh in favor of granting Plaintiff's fee petition.

Awards of attorneys' fees in fee shifting cases need not be proportional to the amount recovered. "Congress enacted fee shifting … precisely because the expected monetary recovery in many cases was too small to attract effective legal representation." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) (Title VII case). "Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-North R.R.*, 658 F.3d 154, 169 (2d Cir. 2011) (emphasis in original) (FMLA case). The ability of FLSA claimants to recover a reasonable attorney's fee is crucial to the statute's enforcement scheme. *See, e.g., Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (explaining that the recovery of FLSA attorney's fees "ensure[s] effective access to the judicial process [and] encourages the vindication of congressionally identified policies and rights").

It is commonplace and entirely consistent with the FLSA's legislative purpose for FLSA attorneys' fees awards to equal or exceed the plaintiffs' recovered unpaid wages. *See, e.g., Id.* (upholding award of $40,000 in fees even though plaintiff recovered only

$7,680 in damages); *Lassen v. Hoyt Livery, Inc.*, 3:13-cv-01529, ECF No. 201, *4 (D. Conn. June 5, 2017) (Bolden, J) (approving an attorneys' award of up to $400,000 out of a $670,000 settlement fund); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354-358 (5th Cir. 1990) (upholding award of $9,250 in attorney's fees even though plaintiff recovered only $1,698); *Bonnett v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Gonzalez v. Bustleton Servs.*, 2010 WL 3282623 (E.D. Pa. Aug. 18, 2010) (awarding $73,195 for attorneys' fees and $2,871.78 for costs for a judgment of less than $18,000); *Albers v. Tri-State Implement, Inc.*, CR. 06-4242-KES, 2010 WL 960010 (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' damages totaled only $2,137.97).

With respect to costs of the action, the defendant must reimburse prevailing plaintiffs for the sort of costs that are "normally charged to a fee-paying client." *See, e.g., Renfro v. Indiana Mich. Power Co.,* 2007 WL 710138 at *1 (W.D. Mich., Mar. 6, 2007) (overruled on other grounds, 497 F.3d 573 (6th Cir. 2007) (citations omitted)); *Communities for Equity v. Mich. High School Athletic Ass'n,* 2008 WL 906031 at *22–23 (W.D. Mich., Mar. 31, 2008).

In addition to the payments to the collective group members, Defendant has agreed to separately pay Class Counsel attorneys' fees and out-of-pocket costs and expenses incurred by all of Plaintiff's counsel in an amount not to exceed $175,000, subject to Court approval. (*See* Agreement, § 14.) In this case, an award of $175,000 in attorney fees and costs is reasonable because it will either be equal to or slightly greater than Plaintiff's fees

based on the lodestar method. Baillon Thome Jozwiak & Wanta LLP had in excess of 400 hours with a total lodestar of $155,967.00. (*See* Massie Decl., ¶ 10; Exhibit A.) Furthermore, Baillon Thome Jozwiak & Wanta LLP's expenses in the matter are $7,302.46. (*Id.* at ¶¶ 9-10; Exhibit B.) The Hayber Law Firm, LLC, expended 16 hours for a total lodestar of $4,335.00. (*See* Hayber Decl., ¶ 6, Exhibit A.) The Hayber Law Firm's expenses in this matter are $721.60. (*Id.* at ¶ 9, Exhibit B.) Altogether, Class Counsel has incurred $168,326.06 in attorneys' fees and costs to date with additional fees and costs forthcoming through final approval.

Class Counsel's fee request represents the product of negotiations with Martin's in an effort to resolve all aspects of this litigation. Plaintiff's counsel's requested fees and cost reimbursement is reasonable and within the scope of the FLSA. The fee award is particularly reasonable in this case because the settlement benefit includes both a substantial cash component and Defendant has agreed to implement certain changes and modifications to the independent distributor model including establishing the position of Distributor Advocate.

**A. The Number of Hours Class Counsel Devoted to This Litigation is Reasonable**

The requested $175,000 in attorneys' fees and expenses is reasonable considering the amount of work done by Class Counsel in litigating and settling this matter. As set forth in Exhibit A, Class Counsel devoted over 400 hours to prosecute this case and achieve settlement. (Massie Decl. ¶ 10, Exhibit A.) After evaluating Martin's employment and payment practices and the strengths and weaknesses of the case, Class Counsel felt it was in the best interests of the purported Settlement Group to attempt to resolve this matter

before the onset of expensive and prolonged discovery and motion practice. Accordingly, from the early stages of the litigation, Class Counsel spent the bulk of their time engaged in settlement discussions with counsel for Defendant. Ultimately, the Parties engaged in mediation and were able to reach a Settlement.

After the substantive terms of the Settlement were established, the Parties exchanged several versions of the Agreement and the exhibits. (Massie Decl. ¶11.) The Parties also conducted multiple teleconferences to discuss the details of the Settlement Agreement and the exhibits. (*Id*.) Once the Agreement was finalized, Class Counsel performed all of the briefing and filing related to the joint motion for Preliminary Approval of the Settlement. (*Id*.) After the Court preliminarily approved the Agreement and directed notice to the Settlement Class, Class Counsel collaborated with Martin's counsel to effectuate the Notice Program. (*Id*.) Specifically, Class Counsel handled the assembly of each of the individualized notice documents and disseminated notice to all proposed Settlement Group Members. (*Id*.) In addition, Class Counsel fielded questions from Settlement Group Members regarding the Settlement. (*Id*.)

Class Counsel similarly performed all the briefing and filing related to the Parties' joint motion for Final Approval of the Settlement. (*Id*.) Class Counsel's work will not end upon Final Approval. (*Id*.) Indeed, Class Counsel will oversee the Settlement claims administration process and continue to respond to questions and correspondence from Settlement Group Members. (*Id*.)

In short, the hours that Class Counsel devoted to this Action were reasonable and necessary. Indeed, their hard work and commitment ultimately paid off, resulting in a comprehensive settlement that provides significant relief to Settlement Group Members.

**B.  Class Counsel's Rates Are Reasonable Under the Forum Rule**

The rates Class Counsel actually charge in this District are the best evidence of what the market will bear, as compared to a "rate devised by the court" because "[l]awyers do not come from cookie cutters. .. . Clients are willing to pay more, per hour, for. .. better lawyers. .. . Markets recognize these truths; judges must too." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) (Easterbrook, J.); *see also Rozell v. Ross Holst,* 576 F. Supp. 2d 527, 545 (S.D.N.Y. 2008) ("[T]he range of rates that plaintiff's counsel actually charge their clients … is obviously strong evidence of what the market will bear."). In this district, clients regularly pay Class Counsel's customary hourly rates. Courts in this district have approved Class Counsel Richard Hayber's attorney fees at a rate of $500 for similar work. (Hayber Decl. ¶ 8.) The fees sought by the attorneys of Baillon Thome Jozwiak and Wanta LLP in this case are in line with the prevailing rate sought by Class Counsel within this district ($475 for attorney Wanta; $375 for attorney Massie and $300 for attorney Lodge).

Here, in support of the lodestar determination, Plaintiff has submitted the sworn declaration of Class Counsel attesting to their hourly rates, total hours devoted to the case, their experience, and describing their efforts to prosecute this collective action. (*See* Massie Decl. ¶¶ 6–8; Exhibit A.) The hourly rates, total hours worked, and an itemization of the work completed by Class Counsel is attached as Exhibit A to the Massie

Declaration. As set forth in Class Counsel's contemporaneous billing records, Class

Counsel's hourly rates in this Action range from $300 to $475, while hourly rates for

legal assistants and paralegals range from $90 to $200. (Massie Decl. ¶ 8.) These hourly

rates submitted by Class Counsel reflect a discount from their usual and customary

billing rates in national class and collective action work and take into account the

prevailing rates for similar work in the District of Connecticut. (Massie Decl. ¶¶ 7-8.)

Class Counsel are well-respected members of the bar and experienced litigators in the

field of wage and hour collective action litigation. (Massie Decl. ¶ 14; Wanta Decl. ¶ 4.)

Their rates are appropriate for complex class and collective action litigation and reflect a

high level of experience and skill necessary for success.

Class Counsel's hourly rates are comparable to those approved in courts within

this Circuit for FLSA collective actions. *Fuk Lin Pau v. Jian Le Chen*, No.

3:14CV841(JBA), 2015 WL 8490907, at *2 (D. Conn. Dec. 10, 2015) (collecting cases

and finding the requested rate of $350 to be in line with fee requests approved by other

courts in this District in connection with FLSA cases); *Lopes v. Brazilian Travel Serv.,

Ltd*., No. 17CV820, 2017 WL 10311218, at *3 (D. Conn. Sept. 26, 2017) (finding $400 to

be a reasonable rate in an FLSA action to recover wages.); *Wallace v. Fox*, 7 F.Supp.2d

132 (D.Conn.1998) (in class action shareholder derivative suit, average rate of $300 to

$375 was reasonable); *Doe v. Bridgeport Police Dep't*, 468 F. Supp. 2d 333, 339 (D.

Conn. 2006) (in a class action, finding a rate of $375 reasonable and in line with

attorneys with comparable skill and experience.); *M.K. ex rel. K. v. Sergi*, 578 F. Supp. 2d

425 (D. Conn. 2008) (same); *Palmer v. Midland Funding, LLC*, No. 3:14-CV-00691 JCH,

2015 WL 1897457, at *2 (D. Conn. Apr. 27, 2015) (finding a rate of $400 is a reasonable hourly rate in a case under the Fair Debt Collection Practices Act.);

Moreover, Class Counsel's customary rates have been previously approved by the courts (including at higher national rates). *See Dennings, et al. v. Clearwire Corp.*, No. C10-18590-JLR, Order Granting Motion for Attorney's Fees and Expenses (W.D. Wash. 2013) (approving the requested award of attorneys' fees and expenses, including attorneys' fees of Baillon Thome Jozwiak & Wanta LLP, for its work on one of the three settled cases filed as class actions against Clearwire); *Low v. San Diego Union-Tribune, LLC*, No. 3:11-CV-01090-JAH-WMC Order Granting Plaintiff's Motion for An Award of Attorneys' Fees and Expenses (S.D. Cal. 2013) (approving the requested award of attorneys' fees and expenses, including attorneys' fees of Baillon Thome Jozwiak & Wanta LLP); *Yarbrough v. Martin's Famous Pastry Shoppe, Inc.*, No. 11-cv-021440-JEJ, Order Approving Settlement (M.D. Pa. 2012) (approving entire settlement including attorneys' fees of Baillon Thome Jozwiak & Wanta LLP); *In re Groupon Mktg. & Sales Practices Litig.*, 3:11-MD-02238-DMS-RBB, Final Judgment (S.D. Ca. 2013) (approving the requested attorneys' fees and expenses, including attorneys' fees of Baillon Thome Jozwiak & Wanta LLP); *Coyle v. Flowers Foods Incorporated, et al.*, 2:15-cv-01372-PHX-DLR (D. Ariz.) (approving attorney Wanta's hourly rate of $600). Class Counsel's hourly rates, which are on par with the prevailing market rates of attorneys in this District, are reasonable and appropriate, particularly given counsel's demonstrated skill, experience, and reputation in the area of complex class and collective action litigation.

**C.  The Johnson Factors Support Class Counsel's Fee Petition.**

Courts may consider "all of the case-specific variables that [may be] relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," including the following factors enunciated in *Johnson v. Ga. Highway Express, Inc.*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "'undesirability'" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19). These factors support Class Counsel's fee petition as reasonable.

### i. The Contingent Nature of Success

Unlike traditional firms that receive hourly fees on a monthly basis, plaintiff's attorneys who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, document production, and so forth), without ever receiving any ongoing payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds or even thousands of hours of work, nothing is recovered. This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all,

generally receive far more in winning cases than they would if they charged an hourly rate").

By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue in this case. It is well-recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." *Reiter v. Sonotone Corp*., 442 U.S. 330, 344 (1979) (addressing anti-trust laws).

This reasoning applies with equal force to wage and hour cases. Courts have recognized that fee awards in [wage and hour] cases like this serve the dual purposes of encouraging 'private attorneys general' to seek redress for violations and discouraging future misconduct of a similar nature. Class actions are also an invaluable safeguard of public rights.. . If courts denied sufficient attorneys' fees 'no attorneys... would likely be willing to take on... small-scale class actions[.]' *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, *57 (S.D.N.Y. Sept. 16, 2011) (internal citations omitted); *see also Skirchak v. Dynamics Research Corp., Inc*., 432 F. Supp. 2d 175, 179 (D. Mass. 2006) ("Allowing private attorneys to prosecute [wage] actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims"), *aff'd* 508 F.3d 49 (1st Cir. 2007).

"Should a fee agreement provide less than a reasonable fee calculated [according to the lodestar method], the defendant should nevertheless be required to pay the higher amount." *Tsombanidis*, 352 F.3d 565 (2d Cir. 2003) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989).); *see also Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 148 (2d Cir.2001) (allowing a higher rate than that actually billed in a Copyright Act case).

Class Counsel began litigating this case in October of 2017 more than two years ago. [*See* Dkt. 1.] Class Counsel covered all expenses and costs associated with mediation and litigation and assumed the risk that they may not recover for these expenses and costs. In the practice of their contingency work, Class Counsel has advanced significant out-of-pocket resources, which have not been repaid, to pursue litigation on behalf of workers in various types of employment cases, including wage, tips, misclassification, and discrimination cases. In sum, a plaintiff-side contingency practice on behalf of low wage workers who could not afford to pay out-of-pocket for counsel, such as Class Counsel's firms, is made possible by the nature of contingency fee work. Thus, in considering the fairness and reasonableness of the proposed attorneys' fees in this case, the Court should consider the nature of Class Counsel's practice, which is only made possible by this contingency fee structure.

The Court should approve the $175,000 in attorney fees and costs sought by Class Counsel. Defendant has agreed not to contest a fee petition of this amount and Class Counsel's lodestar to date shows that the requested amount is reasonable and represents

the value of work performed and yet to be completed through the final approval and distribution.

### ii.        *The Amount Involved in the Case and the Quality of the Results Obtained.*

The Supreme Court has held that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained," *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

Here, Class Counsel has litigated this case and has achieved a significant result for Plaintiff and Opt-ins. The Settlement provides members of the Settlement Group with a significant amount of compensation in exchange for the release of their claims. Specifically, each Settlement Group Member will receive a Share of the Settlement Fund that is equivalent to the one hundred percent of the amount of overtime premium pay owed (50% of the regular rate of pay) for each overtime hour worked. (*See* Agreement § 13.) Additionally, because fewer than all class members have opted-in to the settlement, another distribution will be made from the settlement in an amount up to 20% above their calculated overtime premium pay. (*Id.*) This is an exceptional result for the Settlement Group. The Settlement, as set forth in the agreement, is fair, reasonable, adequate, and in the best interest of the Plaintiffs and the Settlement Group.

In addition to the monetary settlement terms, Defendant has agreed to implement certain changes and modifications to the independent distributor model including establishing the position of Distributor Advocate to oversee the internal dispute resolution process, giving distributors the option to stop servicing unprofitable stops excluding strategic customers, and providing sales management training.

The agreed-upon amount of $175,000 for attorneys' fees and costs was negotiated and agreed upon at arm's-length and is separate from the Settlement Fund amount. This amount was agreed upon without knowing how much additional time and expense Plaintiff's counsel would be incurring to obtain a court-approved settlement for the Settlement Group. Because the award of attorneys' fees is independent, it will not impact the settlement award to Settlement Group Members. Martin's has agreed not to oppose Plaintiff's request and no Settlement Group Member has objected to the award. In consideration of all these factors, Plaintiff's request for award of attorneys' fees is reasonable and Plaintiff respectfully requests the Court grant the award.

### iii.    *Reputation and Experience of Class Counsel and the Level of Skill Required.*

Class Counsel, Shawn J. Wanta, Esq., of the law firm Baillon Thome Jozwiak & Wanta LLP has expertise in employment-related class action litigation and has demonstrated diligent and competent representation in the present litigation, as evidenced by his efforts to efficiently reach a fair resolution. Mr. Wanta is licensed to practice in all courts for the State of Minnesota as well as the United States District Court for the Districts of Minnesota, Northern District of Illinois, and Central District of Illinois. (Wanta Decl. ¶ 5.) He has served or currently serve in the following court-appointed leadership capacities: Class Counsel in *Low v. San Diego Union Tribune*, 11-cv-01090 (S.D. Ca.) and *Dennings v. Clearwire Corporation*, C10-1859-JLR (D. Wash.); Executive Committee Member and Co-Chair of the Discovery Committee in *In re HardiePlank Fiber Cement Siding Litigation*, MDL No. 2359 (D. Minn); and Executive Committee

Member for *Wright, et al. v. Owens Corning*, 09-cv-01567 (W.D. Pa.). (*Id.*) Mr. Wanta

substantially participated, in leadership or other capacities, in the following class action

cases: *In re IKO Roofing Shingles Products Liability Litigation*, MDL. 2104 (C.D. Ill.),

*Pagliaroni v. Mastic Home Exteriors, et al.*, 12-cv-10164 (D. Mass.), *In re: CertainTeed*

*Fiber Cement Siding Litigation*, MDL. No 2270 (E.D. Pa.), and *Gulbankian, et al. v. MW*

*Manufacturers, Inc.*, 10-cv-10392 (D. Mass); *Hartshorn, et al. v. MW Manufacturers,*

*Inc.*, 2012-cv-30122 (D. Mass); *Davis, et al. v. SOH Distribution Co.*, 09-cv-237 (M.D.

Pa.); *Taylor, et al. v. Corporate Transit of America*, 09-05709 (N.D. Ill.); *Egtedt, et al. v.*

*West Publishing Corp.*, 19HA-CV-09-1660 (Dakota County, Minn.); *Cruz, et al. v.*

*Lawson Software, Inc.*, Civil File No. 08-5900 (D. Minn.); *Rehberg, et al. v. Flowers*

*Foods Inc., et al.*, 12-cv-00596-MOC-DSC (W.D.N.C.); *Ketty v. Parkinson's Specialty*

*Care, LLC*, 14-cv-04849, (D. Minn.); *Yarbrough v. Martin's Famous Pastry Shoppe, Inc.*,

11-cv-02144 (M.D. Pa.); and *Chavez v. West Side Comm. Healthcare Svcs., Inc.*, 14-cv-

00207 (D. Minn.). (*Id.*)

Class Counsel, Dustin Massie Esq., of the law firm Baillon Thome Jozwiak &

Wanta LLP has expertise in employment-related class action litigation. (Massie Decl.

¶ 14.) Mr. Massie received his Juris Doctor degree from the University of Minnesota Law

School in 2013 where he received a concentration in Labor and Employment Law. Mr.

Massie works exclusively on behalf of employees in labor and employment litigation.

(*Id.*) Before becoming an associate at Baillon Thome Jozwiak & Wanta LLP, Mr. Massie

was a summer associate and then a full-time associate at Halunen Law from May 2012 to

November 2015 where he practiced employment law and represented consumers in

nation-wide class action litigation. (*Id.*) Over the past five years, Mr. Massie has handled numerous employment matters at all stages of litigation including arguing numerous motions before state and federal courts and co-chairing a case through trial. (*Id.* at ¶ 15.) Mr. Massie has been involved in the mediation and negotiation of numerous settlements of employment cases and understands the increase in complexity and costs associated with pursuing collective action litigation. (*Id.*) Mr. Massie is a member of the National Employment Lawyers Association and the Minnesota Chapter of the National Employment Lawyers Association. (*Id.*) In 2018, Mr. Massie was recognized by Minnesota Lawyer as an "Up & Coming Attorney" for his work in Employment Law and has been selected as a "Rising Star" by SuperLawyers every year since 2017. (*Id.*)

Class Counsel Richard Hayber and attorneys at the Hayber Law Firm also have significant experience representing workers in wage and hour class and collective actions under Connecticut's wage laws and the FLSA. *See, e.g., Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014); *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 230 (D. Conn. 2012). As this Court has previously observed, the "Hayber Law Firm, LLC, are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions." *Aros v. United Rentals, Inc.*, 2012 WL 3060470, at *6 (D. Conn. July 26, 2012).

Class Counsel has demonstrated diligent and competent representation in the present action, as evidenced by their efforts to efficiently reach a fair resolution and maximize participation in the settlement. Because the award of attorney's fees is

independent from the settlement fund, it will not impact the individual award of Settlement Group Members. While Plaintiff is not seeking a lodestar multiplier, the application of the *Johnson factors* demonstrates that Plaintiff's request for an award of attorney fees is reasonable and Plaintiff respectfully requests the Court grant the award.

### iv.    *Plaintiff's Expenses Are Reasonable and Necessarily Incurred to Achieve the Benefit Obtained on Behalf of the Settlement Group.*

Included in the $175,000 sought by Plaintiff for award to Class Counsel are expenses necessarily incurred in connection with the prosecution and negotiation of this action. The FLSA authorizes the court to award costs to prevailing plaintiffs. See 29 U.S.C. § 216(b). Under Second Circuit precedent, awardable costs include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal citations omitted).

Plaintiff seeks reimbursement for similar expenses here. Although Plaintiff does not seek an award of expenses in addition to the requested $175,000 in attorneys' fees, they have provided an accounting of $8,024.06 incurred by Class Counsel to date. (Massie Decl. ¶ 9, Exhibit B; Hayber Decl. ¶ 9.) Class Counsel incurred reasonable costs during the course of litigation and negotiation that include expenses related to: filing fees, mediation fees, photocopies, and postage, among others detailed in the declarations submitted in support herewith. (*Id.*) All of these costs were necessary and reasonably incurred to bring this case to a successful conclusion, and they reflect the market rates for

the various categories of expenses incurred. (*Id.*) Finally, Class Counsel advanced these expenses without assurance that they would ever be reimbursed.

### v.  *The Court Should Approve the Service Award of $2,500 for the Class Representative.*

Finally, the Named Plaintiff respectfully requests the Court approve a Service Award in the amount of $2,500 for his work as Class Representative. This District has recognized that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g, Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, at * 1(BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.")

"[Service] awards... are within the discretion of the court." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (discussing service awards in a Rule 23 class action settlement). In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiffs; (2) time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. *See id.* Here, the named Plaintiff

satisfies all three factors. First, the Named Plaintiff took on significant risk in that he dedicated his time to litigating this action without any guarantee of success. Second, the Named Plaintiff has played an essential role throughout the duration of the action. Specifically, the Named Plaintiff assisted Class Counsel by providing evidence and gathering facts for this case; collecting documents to assist in negotiating a favorable settlement; and staying abreast of the litigation and settlement negotiations. (Massie Decl. ¶ 18.) Third, the Named Plaintiff's contributions were essential in obtaining recovery for the class and vindicating their rights. In addition to the above terms, no Settlement Group Member has objected to the award and likewise, Martin's has agreed not to oppose the service award. (*See* Agreement § 13.6.)

Plaintiff's efforts and time acting as the Class Representative should not go unrecognized. Accordingly, Plaintiff respectfully requests that the Court approve the modest Service Award of $2,500 in effectuating this settlement.

## V.     Conclusion

Plaintiff's requests for attorneys' fees and reimbursement for expenses are reasonable considering the comprehensive and favorable Settlement Agreement reached by Class Counsel. Similarly, Plaintiff has played essential roles throughout litigation and settlement negotiations and should be compensated for their diligent efforts. Accordingly, Plaintiff respectfully request the court grant this motion for award of attorneys' fees, expenses and Service Award.

\*              \*              \*

Dated: January 6, 2020

Respectfully submitted,

/s Dustin W. Massie
Shawn J. Wanta, #phv09383
Dustin W. Massie, #phv09384
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
sjwanta@baillonthome.com
dmassie@baillonthome.com

Richard E. Hayber, #ct11629
THE HAYBER LAW FIRM, LLC
221 Main Street, Suite 502
Hartford, CT 06106
Telephone: (860) 522-8888
Fax: (860) 218-9555
rhayber@hayberlawfirm.com

**ATTORNEYS FOR NAMED PLAINTIFF
DAVID SMELSER AND OPT-IN
PLAINTIFFS**